BETANCOURT, VAN HEMMEN, GRECO & KENYON LLC
Attorneys for Plaintiff Wrist Worldwide Trading GMBH
114 Maple Avenue
Red Bank, New Jersey 07701
732-530-464
Ronald Betancourt (RB5838)
Todd P. Kenyon (TK7654)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Wrist Worldwide Trading GMBH )<br><br>Plaintiff, )<br><br>-v- )<br><br>MV AUTO BANNER, her engines, tackle, )<br>boilers, permits appurtenances, etc., <u>in</u> <u>rem</u>, )<br>and STX Pan Ocean Co. Ltd, )<br><br>Defendants. ) | Civ.<br><br>**VERIFIED COMPLAINT** |

For its Verified Complaint, Plaintiff, Wrist Worldwide Trading GMBH ("Plaintiff"), by and through its undersigned attorneys, alleges as follows:

1.     This Verified Complaint alleges admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and this Court has admiralty jurisdiction over such claims pursuant to 28 U.S.C. § 1333.

2.     This action is further brought pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims.

3.     Plaintiff is a foreign entity with a place of business in Hamburg, Germany.

4.     Defendant STX Pan Ocean Co. Ltd. ("Pan Ocean") is a foreign entity with a place of business in Seoul, Korea and a representative office in Rutherford, New Jersey.

5.      The defendant vessel, MV AUTO BANNER ("AUTO BANNER"), is an ocean going vessel that is now or will be within this District and the jurisdiction of this Honorable Court during the pendency of this matter.

6.      Pan Ocean is the registered owner and ship manager of the AUTO BANNER.

7.      At various times in 2009, Plaintiff contracted to supply fuel oil and gas oil ("Bunkers") to the AUTO BANNER and to the MV AUTO ATLAS, which is an ocean going vessel that is also owned and managed by Pan Ocean.

8.      At the time the Bunkers were supplied, the Vessels were, on information and belief, on charter to European Red Sea African Lines, Ltd. ("Ersal").

9.      The Bunker supplies were executed with sales confirmations listing the "Seller" as "Wrist Worldwide Trading GMHB" and the "Buyer" as "Master and/or owners and/or charterers and/or [vessel] and/or ERSAL Eurpoean Red Sea African Lines Ltd. C/o Altrans SAL." (The confirmations are attached hereto as Exhibit 1.)

10.      Plaintiff supplied the Bunkers to the Vessels pursuant to its "Terms and Conditions of Sale for Marine Bunkers." (Copy attached as Exhibit 2.)

11.      The "Buyer" is defined in the Terms and Conditions to include the "vessel supplied" and the "Owners, Managers/Operators, Disponent Owners . . . ."

12.      Despite due demand, the Plaintiff has not been paid for the Bunkers supplied to the Vessels.

13.      The following amounts are due for the Bunkers supplied (invoices attached as Exhibit 3):

2

| Vessel | Location/Date | Amount Due |
|---|---|---|
| AUTO BANNER | Algeciras/13 March 2009 | $162,197.76 |
| AUTO BANNER | Jeddah/1 April 2009 | $68,160.00 |
| AUTO ATLAS | Boston/4 April 2009 | $195,407.52 |
| AUTO BANNER | Fujairah/10 April 2009 | $353,086.50 |
| AUTO ATLAS | Cotonou/23 April 2009 | $47,707.89 |
| | Total Due | $826,559.67 |

14.     Plaintiff has thus suffered damages in the total amount of $826,559.67, plus interest at the rate stated in the Terms and Conditions and as invoiced, and the attorneys' fees and costs in collecting the due amounts.

### In Personam Cause of Action Against Pan Ocean

15.     Plaintiff repeats and realleges paragraphs 1 through 14 above as if fully set forth herein.

16.     Pan Ocean, as the owner and manager of the Vessels receiving bunkers as noted above, and through its actions and the actions of its employees, including the Master of the Vessels, is contractually bound by the bunker sales confirmations and Plaintiff's Terms and Conditions.

17.     Pan Ocean is thus contractually obligated to pay the outstanding invoices.

18.      In the alternative, ERSAL acted as agent in ordering the bunkers on behalf of the Vessels and their Owner, which similarly binds Pan Ocean.

19.     In the alternative, Pan Ocean is a third party beneficiary of the bunker supply contracts and is thus liable on such basis.

3

20.     In the alternative, Pan Ocean as Owner and Operator of the Vessels in oceangoing trade has been unjustly enriched by receiving the benefits of the bunkers supplied by Plaintiff without payment and is thus liable to Plaintiff on equit able grounds to provide reasonable compensation for the benefit since retention of the benefit without payment would be unjust.

21.     Pan Ocean is thus liable to Plaintiff for the total amount outstanding of $826,559.67, plus interest at the rate stated in the Terms and Conditions and as invoiced, and the attorneys' fees and costs in collecting the due amounts.

**In Rem Cause of Action Against AUTO BANNER**

22.     Plaintiff repeats and realleges paragraphs 1 through 21 above as if fully set forth herein.

23.     As a supplier of necessaries to a vessel, Plaintiff has a maritime lien on the AUTO BANNER for the necessaries supplied.

24.     The AUTO BANNER is thus liable to Plaintiff in rem for the bunkers supplied to it in the total amount of $583,444.26, plus interest at the rate stated in the Terms and Conditions and as invoiced, and the attorneys fees' and costs in collecting the due amounts.

WHEREFORE, Plaintiff prays:

A.     That process in due form of law in accordance with Rule C of the Supplemental Rules for Admiralty and Maritime Claims and in the form of a Warrant of Arrest be issued against the AUTO BANNER and that the AUTO BANNER be arrested, taken in to custody of this Court, and sold at auction by the United States Marshal and, thereafter, that the sale proceeds be distributed to Plaintiff in preference to all others, in satisfaction of its claim set forth herein; and

4

B.      That process in due form of law issue against defendant Pan Ocean, citing it

to appear and answer under oath the matters alleged in this Verified Complaint, and that judgment

in favor of Plaintiff be entered against defendant Pan Ocean in the amount demanded in this Verified

Complaint; and

C.      That this Court grant Plaintiff such other, further and different relief as is

deemed just and proper.

Dated: May 7, 2010

BETANCOURT, VAN HEMMEN, GRECO & KENYON LLC
Attorneys for Plaintiff

By    _Ronald Betancourt_

Ronald Betancourt (RB5838)

## ATTORNEY VERIFICATION

I, RONALD BETANCOURT, hereby declare under penalty of perjury as follows:

I am a member of the firm Betancourt, Van Hemmen, Greco & Kenyon LLC, attorneys for Plaintiff herein. I have read the foregoing Verified Complaint, and know the contents thereof, and the same are true and correct to the best of my knowledge, information and belief. I have reviewed documentation concerning this matter provided by Plaintiff and have corresponded with them on the information provided. I am authorized by Plaintiff to make this verification. I am making this verification since there is no officer or director of Plaintiff within the District to execute same. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May 7, 2010.

_Ronald Betancourt_

RONALD BETANCOURT

5

# EXHIBIT 1

@Cover=nocover//@
@Priority=2//@



# Wrist Worldwide
## Trading GmbH

@Faxto=ERSAL European Red Sea African@0090265529556//@

> ERSAL European Red Sea African
> Lines Ltd. c/o All Trans S.A.L.
> Emir Bechir Street, Building 1470
> Bloc A, 6th Floor
> Beirut, 2026 1210
> Lebanon

Neumühlen 11
D-22763 Hamburg
Germany
Phone: +49 40 3255900
Fax: +49 40 330471
Tax No. / Steuer Nr. 74/813/24058
E-mail: hamburg@wristbunker.de
Internet: http://www.owbunker.com
Managing director: Morten Skou
HR B 100091

@Name=Sales confirmation 119-13338//@

# Sales Confirmation

Hamburg  13-03-2009  17:01

Sales order No. 119-13338

**We are hereby pleased to acknowledge receipt of your order as follows:**

| | | |
|---|---|---|
| **VESSEL** | : | **AUTO BANNER** |
| **PORT** | : | **ALGECIRAS** |
| **DELIVERY DATE** | : | **18.03.09** |
| **ACCOUNT** | : | **MASTER AND/OR OWNERS AND/OR CHARTERERS AND/OR MV  AUTO BANNER** |
| | **AND/OR** | **ERSAL EUROPEAN RED SEA AFRICAN LINES LTD. C/O ALL TRANS S.A.L.** |
| **SELLER** | : | **Wrist Worldwide Trading GmbH** |

| QUANTITY | QUALITY | CURR | PRICE/PR | SUPPLIER |
|---|---|---|---|---|
| 450 MT | FUELOIL 180 CST | USD | 316,00 MT | O.W. BUNKER |
| 45 MT | GASOIL | USD | 444,00 MT | O.W. BUNKER |

| | | |
|---|---|---|
| **AGENT** | : | **BLAND** |
| **REMARKS** | : | **ISO 8217 : 2005 (E)** |

# Wrist Worldwide Trading GmbH

Neumühlen 11  -   D-22763 Hamburg   -   Germany
Tel : +49 40 325590-0  Fax: +49 40 330471   E-Mail: hamburg@wristbunker.de

TO      :     ERSAL EUROPEAN RED SEA AFRICAN LINES LTD.C/O ALLTRANS S.A.L.
ATTN. :     MR. MOHAMMED HAMAD

CONFIRMATION OF ORDER

WE ARE PLEASED TO RECONFIRM THE FOLLOWING ORDER:

SELLER..........WRIST WORLDWIDE TRADING GMBH
BUYER...........MASTER AND/OR OWNERS AND/OR CHARTERERS
              AND/OR MV AUTO BANNER
              AND/OR ERSAL EUROPEAN SEA AFRICAN LINES LTD. C/O ALLTRANS S.A.L.
VESSEL.........AUTO BANNER
PORT.............JEDDAH
E.T.A..............01.04.2009
AGENT...........A. KALFOOT TRADING & SHIPPING AGENCIES
SUPPLIER......SAUDI SHIPPING

QUALITY........IFO RME 180 - ISO 8217:2005
QUANTITY.....200 MTS
PRICE............USD 355,- PMTD

CANCELLATION-CHARGES APPLY TO ORDERS CANCELLED OTHER THAN FORCE MAJEURE.
DELIVERIES ARE MADE IN ACCORDANCE WITH BARGE PROGRAMME/SCHEDULE, NO CLAIM CAN BE
ACCEPTED FOR ANY DELAY WHICH MAY ARISE FROM ADVERSE WEATHER OR CONGESTION.
OVERTIME, DEMURRAGE, LOCAL TAXES AND OR CHARGES (IF ANY) TO BE FOR BUYERS ACCOUNT.
MARPOL ANNEX VI - SUPPLIERS EXCEPTIONS AS PER CUSTODY OF THE PORT.

VESSELS CREW SHALL WITNESS AND VERIFY SUPPLIERS MEASURING OF QUANTITIES AND DRAWING,
SEALING OF REPRESENTATIVE SAMPLES. THESE VERIFIED QUANTITIES AND SAMPLES AS SIGNED ON
THE DELIVERY RECEIPT ARE THE ONLY ONES DEEMED REPRESENTATIVE IN CASE OF A DISPUTE.

NO DISCLAIMER STAMP OR REMARK OF ANY TYPE OR FORM WILL BE ACCEPTED ON THE BUNKER
DELIVERY RECEIPT OR ON THE SAMPLES, NOR, WILL ANY STAMP OR REMARK IF APPLIED ALTER,
CHANGE OR WAIVE THE SELLER'S MARITIME LIEN AGAINST THE VESSEL, OR WAIVE THE VESSEL'S
ULTIMATE RESPONSIBILITY FOR THE DEBT INCURRED THROUGH THIS TRANSACTION. IN CASE YOU
HAVE ANY REMARKS YOU MAY ISSUE THEM AS A SEPARATE LETTER OF PROTEST. THE SUPPLIERS
REPRESENTATIVE WILL ACCEPT TO SIGN SUCH A LETTER SOLELY FOR RECEIPT ONLY.

PAYMENT: WITHIN MAX 30 DAYS FROM DATE OF DELIVERY AGAINST TELEX/FAX INVOICE WITH
DOCUMENTS TO FOLLOW. LATE PAYMENT CHARGE : 2% INTEREST PER MONTH PRORATA.

TERMS: THIS SALE AND DELIVERY OF THE MARINE FUELS DESCRIBED ABOVE IS SUBJECT TO
SUPPLIERS GENERAL TERMS OF SALE FOR MARINE FUELS. THE ACCEPTANCE OF THE MARINE FUELS
BY THE VESSEL NAMED ABOVE SHALL BE DEEMED TO CONSTITUE ACCEPTANCE OF THE SAID
GENERAL TERMS APPLICIABLE TO YOU AS `BUYER` AND WRIST WORLDWIDE TRADING GMBH AS
`SELLER` THE SAID TERMS OF CONDITIONS ARE WELLKNOWN TO YOU AND REMAINS IN YOUR
POSSESSION. OTHERWISE IT IS YOUR OBLIGATION TO REQUEST ANOTHER COPY OF SAME.

ANY ERRORS OR OMISSIONS IN ABOVE CONFIRMATION SHOULD BE REPORTED IMMEDIATELY.

MANY THANKS FOR THIS NOMINATION AND KIND REGARDS

WRIST WORLDWIDE TRADING GMBH
BORIS GRONENBERG

**Wrist Worldwide Trading GmbH**
Buchstr. 4   D-22087 Hamburg   Germany
Tel : +49 40 325590-0   Fax: +49 40 330471   E-mail: hamburg@wristbunker.de

TO      : ERSAL EUROPEAN RED SEA AFRICAN LINES LTD. c/o ALLTRANS SAL
ATTN: :  MR. MOHAMMAD HAMAD

## C O N F I R M A T I O N   O F   O R D E R

WE ARE PLEASED TO RECONFIRM THE FOLLOWING ORDER:

SELLER..........WRIST WORLDWIDE TRADING GMBH
BUYER...........MASTER AND/OR OWNERS AND/OR CHARTERERS
                AND/OR MVAUTO ATLAS
                AND/OR ERSAL EUROPEAN RED SEA AFRICAN LINES LTD. c/o ALLTRANS SAL
VESSEL.........AUTO ATLAS
PORT.............BOSTON
E.T.A..............29.-30.03.2009
AGENT...........WILHELMSEN
SUPPLIER.....GLOBAL FUELS

**QUALITY........IFO RME 180 - ISO 8217:2005**
QUANTITY.....450 MTS
PRICE.............USD 389,- PMTW

BARGING.......USD 13,58 PMT / MIN FOR 427-500 MTS
EXTRAS.........USD 0,08/BBL  - FEDERAL OIL SPIL TAX
                USD 0.02/BBL - STATE OIL SPILL

OVERTIME, LOCAL TAXES AND OR CHARGES (IF ANY) TO BE FOR BUYERS ACCOUNT.
MARPOL 73/78 ANNEX VI - SUPPLIERS EXCEPTION SAMPLING AT BARGE MANIFOLD.

VESSELS CREW SHALL WITNESS AND VERIFY SUPPLIERS MEASURING OF QUANTITIES AND DRAWING,
SEALING OF REPRESENTATIVE SAMPLES. THESE VERIFIED QUANTITIES AND SAMPLES AS SIGNED ON
THE DELIVERY RECEIPT ARE THE ONLY ONES DEEMED REPRESENTATIVE IN CASE OF A DISPUTE.

NO DISCLAIMER STAMP OR REMARK OF ANY TYPE OR FORM WILL BE ACCEPTED ON THE BUNKER
DELIVERY RECEIPT OR ON THE SAMPLES, NOR, WILL ANY STAMP OR REMARK IF APPLIED ALTER,
CHANGE OR WAIVE THE SELLER'S MARITIME LIEN AGAINST THE VESSEL, OR WAIVE THE VESSEL'S
ULTIMATE RESPONSIBILITY FOR THE DEBT INCURRED THROUGH THIS TRANSACTION. IN CASE YOU
HAVE ANY REMARKS YOU MAY ISSUE THEM AS A SEPARATE LETTER OF PROTEST. THE SUPPLIERS
REPRESENTATIVE WILL ACCEPT TO SIGN SUCH A LETTER SOLELY FOR RECEIPT ONLY.

PAYMENT: WITHIN MAX 30 DAYS FROM DATE OF DELIVERY AGAINST TELEX/FAX INVOICE WITH
DOCUMENTS TO FOLLOW. LATE PAYMENT CHARGE : 2% INTEREST PER MONTH PRORATA.

TERMS: THIS SALE AND DELIVERY OF THE MARINE FUELS DESCRIBED ABOVE IS SUBJECT TO
SUPPLIERS GENERAL TERMS OF SALE FOR MARINE FUELS. THE ACCEPTANCE OF THE MARINE FUELS
BY THE VESSEL NAMED ABOVE SHALL BE DEEMED TO CONSTITUE ACCEPTANCE OF THE SAID
GENERAL TERMS APPLICIABLE TO YOU AS 'BUYER' AND WRIST WORLDWIDE TRADING GMBH AS
'SELLER' THE SAID TERMS OF CONDITIONS ARE WELLKNOWN TO YOU AND REMAINS IN YOUR
POSSESSION. OTHERWISE IT IS YOUR OBLIGATION TO REQUEST ANOTHER COPY OF SAME.

ANY ERRORS OR OMISSIONS IN ABOVE CONFIRMATION SHOULD BE REPORTED IMMEDIATELY.

MANY THANKS FOR THIS NOMINATION AND KIND REGARDS

WRIST WORLDWIDE TRADING GMBH
BORIS GRONENBERG

# Wrist Worldwide Trading GmbH

Neumühlen 11 - D-22763 Hamburg - Germany
Tel : +49 40 325590-0  Fax: +49 40 330471  E-Mail: hamburg@wristbunker.de

TO     :   ERSAL EUROPEAN RED SEA AFRICAN LINES LTD.C/O ALLTRANS S.A.L.
ATTN. :   MR. IMAD ELIA

## CONFIRMATION OF ORDER

WE ARE PLEASED TO RECONFIRM THE FOLLOWING ORDER:

SELLER..........WRIST WORLDWIDE TRADING GMBH
BUYER...........MASTER AND/OR OWNERS AND/OR CHARTERERS
                AND/OR MV AUTO BANNER
                AND/OR ERSAL EUROPEAN SEA AFRICAN LINES LTD. C/O ALLTRANS S.A.L.
VESSEL..........AUTO BANNER
PORT.............FUJAIRAH
E.T.A..............10.-11.04.2009
AGENT...........EMIRATES SHIPPING LINE
SUPPLIER......AEGEAN

QUALITY........IFO RME 180 - ISO 8217:2005
QUANTITY.....950 MTS
PRICE............USD 356,- PMTD

QUALITY.......MGO DMA - ISO 8217:2005
QUANTITY....45 MTS
PRICE............USD 555,- PMTD

CANCELLATION-CHARGES APPLY TO ORDERS CANCELLED OTHER THAN FORCE MAJEURE.
DELIVERIES ARE MADE IN ACCORDANCE WITH BARGE PROGRAMME/SCHEDULE, NO CLAIM CAN BE
ACCEPTED FOR ANY DELAY WHICH MAY ARISE FROM ADVERSE WEATHER OR CONGESTION.
OVERTIME, DEMURRAGE, LOCAL TAXES AND OR CHARGES (IF ANY) TO BE FOR BUYERS ACCOUNT.
MARPOL ANNEX VI - SUPPLIERS EXCEPTIONS AS PER CUSTODY OF THE PORT.

VESSELS CREW SHALL WITNESS AND VERIFY SUPPLIERS MEASURING OF QUANTITIES AND DRAWING,
SEALING OF REPRESENTATIVE SAMPLES. THESE VERIFIED QUANTITIES AND SAMPLES AS SIGNED ON
THE DELIVERY RECEIPT ARE THE ONLY ONES DEEMED REPRESENTATIVE IN CASE OF A DISPUTE.

NO DISCLAIMER STAMP OR REMARK OF ANY TYPE OR FORM WILL BE ACCEPTED ON THE BUNKER
DELIVERY RECEIPT OR ON THE SAMPLES, NOR, WILL ANY STAMP OR REMARK IF APPLIED ALTER,
CHANGE OR WAIVE THE SELLER's MARITIME LIEN AGAINST THE VESSEL, OR WAIVE THE VESSEL'S
ULTIMATE RESPONSIBILITY FOR THE DEBT INCURRED THROUGH THIS TRANSACTION. IN CASE YOU
HAVE ANY REMARKS YOU MAY ISSUE THEM AS A SEPARATE LETTER OF PROTEST. THE SUPPLIERS
REPRESENTATIVE WILL ACCEPT TO SIGN SUCH A LETTER SOLELY FOR RECEIPT ONLY.

PAYMENT: WITHIN MAX 30 DAYS FROM DATE OF DELIVERY AGAINST TELEX/FAX INVOICE WITH
DOCUMENTS TO FOLLOW. LATE PAYMENT CHARGE : 2% INTEREST PER MONTH PRORATA.

TERMS: THIS SALE AND DELIVERY OF THE MARINE FUELS DESCRIBED ABOVE IS SUBJECT TO
SUPPLIERS GENERAL TERMS OF SALE FOR MARINE FUELS. THE ACCEPTANCE OF THE MARINE FUELS
BY THE VESSEL NAMED ABOVE SHALL BE DEEMED TO CONSTITUE ACCEPTANCE OF THE SAID
GENERAL TERMS APPLICIABLE TO YOU AS 'BUYER' AND WRIST WORLDWIDE TRADING GMBH AS
'SELLER' THE SAID TERMS OF CONDITIONS ARE WELLKNOWN TO YOU AND REMAINS IN YOUR
POSSESSION. OTHERWISE IT IS YOUR OBLIGATION TO REQUEST ANOTHER COPY OF SAME.

ANY ERRORS OR OMISSIONS IN ABOVE CONFIRMATION SHOULD BE REPORTED IMMEDIATELY.

MANY THANKS FOR THIS NOMINATION AND KIND REGARDS

WRIST WORLDWIDE TRADING GMBH
BORIS GRONENBERG

# Wrist Worldwide Trading GmbH

Neumühlen 11  -  D-22763 Hamburg  -  Germany
Tel : +49 40 325590-0  Fax: +49 40 330471   E-Mail: hamburg@wristbunker.de

TO     :     ERSAL EUROPEAN RED SEA AFRICAN LINES LTD.C/O ALLTRANS S.A.L.
ATTN. :     MR. IMAD ELIA

CONFIRMATION OF ORDER

WE ARE PLEASED TO RECONFIRM THE FOLLOWING ORDER:

SELLER..........WRIST WORLDWIDE TRADING GMBH
BUYER...........MASTER AND/OR OWNERS AND/OR CHARTERERS
                AND/OR MV AUTO ATLAS
                AND/OR ERSAL EUROPEAN SEA AFRICAN LINES LTD. C/O ALLTRANS S.A.L.
VESSEL..........AUTO ATLAS
PORT.............OFF TEMA/ABIDJAN/COTONOU RANGE
E.T.A.............20.04.2009
SUPPLIER.....ADDAX

QUALITY........IFO RME 180 - ISO 8217:2005
QUANTITY.....200 MTS
PRICE...........USD 510,- PMTD

QUALITY.......MGO DMA - ISO 8217:2005
QUANTITY....20 MTS
PRICE..........USD 660,- PMTD

CANCELLATION-CHARGES APPLY TO ORDERS CANCELLED OTHER THAN FORCE MAJEURE.
DELIVERIES ARE MADE IN ACCORDANCE WITH BARGE PROGRAMME/SCHEDULE, NO CLAIM CAN BE
ACCEPTED FOR ANY DELAY WHICH MAY ARISE FROM ADVERSE WEATHER OR CONGESTION.
OVERTIME, DEMURRAGE, LOCAL TAXES AND/OR CHARGES (IF ANY) TO BE FOR BUYERS ACCOUNT.
MARPOL ANNEX VI - SUPPLIERS EXCEPTIONS AS PER CUSTODY OF THE PORT.

VESSELS CREW SHALL WITNESS AND VERIFY SUPPLIERS MEASURING OF QUANTITIES AND DRAWING,
SEALING OF REPRESENTATIVE SAMPLES. THESE VERIFIED QUANTITIES AND SAMPLES AS SIGNED ON
THE DELIVERY RECEIPT ARE THE ONLY ONES DEEMED REPRESENTATIVE IN CASE OF A DISPUTE.

NO DISCLAIMER STAMP OR REMARK OF ANY TYPE OR FORM WILL BE ACCEPTED ON THE BUNKER
DELIVERY RECEIPT OR ON THE SAMPLES, NOR, WILL ANY STAMP OR REMARK IF APPLIED ALTER,
CHANGE OR WAIVE THE SELLER'S MARITIME LIEN AGAINST THE VESSEL, OR WAIVE THE VESSEL'S
ULTIMATE RESPONSIBILITY FOR THE DEBT INCURRED THROUGH THIS TRANSACTION. IN CASE YOU
HAVE ANY REMARKS YOU MAY ISSUE THEM AS A SEPARATE LETTER OF PROTEST. THE SUPPLIERS
REPRESENTATIVE WILL ACCEPT TO SIGN SUCH A LETTER SOLELY FOR RECEIPT ONLY.

PAYMENT: WITHIN MAX 30 DAYS FROM DATE OF DELIVERY AGAINST TELEX/FAX INVOICE WITH
DOCUMENTS TO FOLLOW. LATE PAYMENT CHARGE : 2% INTEREST PER MONTH PRORATA.

TERMS: THIS SALE AND DELIVERY OF THE MARINE FUELS DESCRIBED ABOVE IS SUBJECT TO
SUPPLIERS GENERAL TERMS OF SALE FOR MARINE FUELS. THE ACCEPTANCE OF THE MARINE FUELS
BY THE VESSEL NAMED ABOVE SHALL BE DEEMED TO CONSTITUE ACCEPTANCE OF THE SAID
GENERAL TERMS APPLICIABLE TO YOU AS 'BUYER' AND WRIST WORLDWIDE TRADING GMBH AS
'SELLER' THE SAID TERMS OF CONDITIONS ARE WELLKNOWN TO YOU AND REMAINS IN YOUR
POSSESSION. OTHERWISE IT IS YOUR OBLIGATION TO REQUEST ANOTHER COPY OF SAME.

ANY ERRORS OR OMISSIONS IN ABOVE CONFIRMATION SHOULD BE REPORTED IMMEDIATELY.

MANY THANKS FOR THIS NOMINATION AND KIND REGARDS

WRIST WORLDWIDE TRADING GMBH
BORIS GRONENBERG

# EXHIBIT 2

# WRIST WORLDWIDE TRADING GMBH

# Terms and Conditions of sale for Marine Bunkers

A.      GENERAL INTRODUCTION

A.1     This is a statement of the terms and conditions according to which the international Wrist Bunker Supply Group (hereinafter the "Sellers") will sell marine bunkers.

A.2     These conditions apply to all offers, quotations, orders, agreements, services and all subsequent contracts of whatever nature, except where otherwise is expressly agreed in writing by Sellers.

A.3     General trading conditions of another party will not apply, unless expressly accepted in writing by Sellers.

A.4     In the case that, for whatever reason, one or more of the (sub)clauses of these general conditions are invalid, the other (sub)clauses hereof shall remain valid and be binding upon the parties.


B.      DEFINITIONS

B.1     Throughout this document the following definitions shall apply:
        "Seller"    means Wrist Bunker Supply GmbH; any office, branch office, affiliate or associate of the Wrist Bunker Supply GmbH Group;
        "Buyer"     means the vessel supplied and jointly and severally her Master, Owners, Managers/Operators, Disponent Owners, Time Charterers, Bareboat Charterers and Charterers or any party requesting offers or quotations for or ordering Bunkers and/or Services and any party on whose behalf the said offers, quotations, orders and subsequent agreements or contracts have been made;
        "Bunkers"   means the commercial grades of bunker oils as generally offered to the Seller's customers for similar use at the time and place of delivery and/or services connected thereto;
        "Owner"     means the registered Owner or Bareboat Charterer of the vessel; and
        "Vessel"    means the Vessel, Ship, Barge or Off-Shore Unit that receives the supply/bunkers; either as end-user or as transfer unit to a third party.


C.      OFFERS, QUOTATIONS AND PRICES

C.1     An Agreement shall only be binding on the Seller upon written confirmation from the Seller thereof.

C.2     Agreements entered into by brokers or any other representative on behalf of the Seller shall only bind the Seller upon written confirmation from the Seller.

C.3     The Seller's offer is based on the applicable taxes, duties, costs, charges and price level of components for Bunkers existing at the time of the conclusion of the agreement (the time of Seller's confirmation). Any later or additional tax,

assessment, duty or other charge of whatever nature and however named, or any increase of components for Bunkers or any additional costs borne by the Seller whatsoever caused by any change in the Seller's contemplated source of supply or otherwise, coming into existence after the agreement has been concluded, shall be added to the agreed purchase price, provided that the Seller shall give the Buyer prior notice of this effect within a reasonable time after the Seller becoming aware of the relevant circumstances.

C.4    All prices and/or tariffs are exclusive VAT, unless specifically stated otherwise.

C.5    If the party requesting Bunkers is not the Owner of the Vessel, the Seller shall have the right to insist as a precondition of sale that a payment guarantee is provided by the Owner. Owner is specified in Clause B.1. The Seller shall have the right to cancel any agreement with the Buyer at any time, if such payment guarantee is not received upon request thereof from the Seller to the Owner.

D.    SPECIFICATIONS (QUALITY – QUANTITY)

D.1    The Buyer shall have the sole responsibility for the nomination of the quality and the quantity of the Bunkers, which shall correspond to the written confirmation from the Seller.

D.2    The quality and quantity shall be as agreed between the Seller and the Buyer and correspond to the Seller's written confirmation.

D.3    Where standard specifications are being given or referred to, tolerances of 5% in quality are to be accepted without compensation or other consequences whatsoever.

D.4    In respect of the quantity agreed upon the Seller shall be at liberty to provide, and the Buyer shall accept a variation of 5% from the agreed quantity, with no other consequence than a similar variation to the corresponding invoice from the Seller.

E.    MEASUREMENTS

E.1    The quantities of bunkers shall be determined from the official gauge or meter of the bunkering barge or tank delivery or of the shore tank in case of delivery ex wharf.

E.2    The Chief Engineer or his representative shall together with the Seller's representative measure and verify the quantities of Bunkers delivered from the tank(s) from which the delivery is made.

E.3    Should the Chief Engineer or his representative fail or decline to verify the quantities, the measurements of quantities made by the Seller shall be final, conclusive and binding and the Buyer shall be deemed to have waived any and all claims in regard to the variance.

F.        SAMPLING

F.1       The Seller shall arrange for four (4) identical representative samples of each
          grade of Bunkers to be drawn throughout the entire bunkering operation. If
          practically possible such samples shall be drawn in the preens of both the
          Sellers and the Buyers or their respective representatives.

F.2       In case that dripsampling is not available onboard barge, tanktruck or shore
          tank, samples shall be taken as a composite of each tank divided with 1/3
          from each the top/mid/bottom of the tanks.

F.3       The samples shall be securely sealed and provided with labels showing the
          Vessel's name, identity of delivery facility, product name, delivery date and
          place and seal number, authenticated with the Vessel's stamp and signed by
          the Seller's representative and the Master of the Vessel or his representative.
          The seal numbers shall be inserted into the BDR/Bunker Delivery Receipts, and
          by signing the BDR both parties agrees to the fact that the samples referred to
          therein are deemed valid and taken in accordance with the requirements as
          specified in this clause.

F.4       Two (2) samples shall be retained by the Seller for ninety (90) days after
          delivery of the Bunkers, or if requested by the Buyer in writing, for as long as
          the Buyer reasonably required. The other two (2) samples shall be retained by
          the receiving Vessel.

F.5       In the event of a dispute in regard to the quality of the Bunkers delivered, the
          samples drawn pursuant to clause F.4 shall be deemed to be conclusive and
          final evidence for the quality of the product delivered. In case of disputes one
          of the samples retained by Sellers shall be forwarded to a by both Sellers and
          Buyers agreed independent laboratory for final and binding analyses. The seal
          must be breached only in presence of both parties unless one/both in writing
          have declared that they will not be present; and both parties shall have the
          right to appoint independent person(s) or institute(s) to witness seal breaking.
          No samples subsequently taken shall be allowed as (additional) evidence. If
          any of the seals have been removed or tampered with by an unauthorized
          person, such sample(s) shall be deemed to have no value as evidence.

G.        DELIVERY

G.1       The time of delivery, as given by the Seller, has been given as an approximate
          time, unless it has been otherwise specifically agreed in writing between the
          parties.

G.2       The time of delivery will only be binding upon the Seller when all information
          necessary for the Seller to comply with its obligations hereunder, have been
          properly delivered to the Seller in reasonable time before the delivery.

G.3     In any case the Buyer, unless otherwise agreed in writing, must give not less than 72 (seventytwo) hours approximate notice of delivery, which is to be followed by 48 (fourtyeight) hours and 24 (twentyfour) hours notice, where the last notice must specify the exact place of delivery. The notices of delivery must be given to Sellers and/or the Seller's representatives/agents.

G.4     The Seller shall be entitled to deliver the Bunkers in special part deliveries, in which case each part delivery shall be construed as a separate delivery.

G.5     The Seller shall not be required to deliver any bunkers for export, if any government permit required has not been obtained in due time before the delivery.

G.6     If the Seller at any time for any reason believes that there may be a shortage of supply at any place and that it as a result thereof may be unable to meet the demands of all its customers, the Seller may allocate its available and anticipated supply among its customers in such a manner as it may determine most reasonable in its sole discretion.

G.7     The Vessel in question shall be bunkered as promptly as the circumstances permit. The Seller shall not be liable for any demurrage paid or incurred by the Buyer or for any loss, damage or delay of the Vessel of any nature whatsoever due to congestion at the loadingterminal, prior commitments of available barges or tanktrucks or any other reason.

G.8     The Buyer shall ensure that the Vessel provides a free, safe and always afloat and accessible side for the delivery of bunkers and that all necessary assistance as required by the Seller or the Seller's representative  is rendered in connection with the delivery.

G.9     The receiving Vessel shall moor, unmoor, hoist bunkering hose(s) from the barge(s) respectively lower hose(s) whenever required by the Seller or the Seller's representative, free of expenses, and in any way requested to assist barge equipment to a smooth supply. The Buyer shall make and be responsible for all connections and disconnections between the delivery hose(s) and the Vessel's bunker intake manifold/pipe and ensure that the hose(s) are properly secured to the Vessel's manifold prior to commencement of delivery.
        During bunkering the Vessel's scrubbers must be safely blocked, which blocking must be made by the Vessel's own crew. Furthermore the Vessel must ensure that all pipes and manifolds and receiving tanks are completely checked and being ready to receive the bunkers, including but not limited to ensuring proper opening/closing of relevant valves, without any risk for spillages, etc, during the bunkering.
        Local further special requirements for receiving bunkers must be followed strictly by the receiving Vessel, whether advised or not by the Seller or the Seller's representative, as it is always the Vessel and the Buyer who remains solely responsible for the awareness of such eventual additional requirements for safety reasons.

G.10    In the case that the Buyer's Vessel is not able to receive the delivery promptly, the Buyer shall pay reasonable demurrage claim to the barging/supplying facilities.

G.11    Delivery shall be deemed completed and all risk, including loss damage, deterioration, depreciation, evaporation, or shrinkage as to the Bunkers delivered shall pass to the Buyer from the time the Bunkers reaches the flange connecting pipe lines/delivery hoses provided by the Seller.

G.12    If the Buyer for whatever reason is unable to receive the full quantity ordered and rendered, the Seller shall have the right to invoice the Buyer for the loss incurred by having to transport the Bunkers back to the storage or by having to sell the bunkers in a degraded form at a lower price than that applicable to the grade originally nominated by the Buyer. The Seller may use this right without prejudice to the Seller's other rights for damages or otherwise pursuant to these terms.

G.13    If possible, the Vessel shall provide segregated tankage to receive the contracted quantity of bunkers; and the Vessel shall always be able to perform own blending on board.

G.14    If delivery is required outside normal business hours or on local weekends, Saturday, Sunday or national Christian holidays the extra expenses incidental to such delivery shall be reimbursed by the Buyer as additional costs.


H.      TITLE

H.1     Title in and to the Bunkers delivered and/or properly rights in and to such Bunkers shall remain vested in the Seller until full payment has been received by the Seller of all amounts due in connection with the respective delivery.

H.2     Until full payment of any amount due to the Seller has been made, the Buyer shall not be entitled to use the Bunkers other than for the propulsion of the Vessel, nor mix, blend, sell, encumber, pledge, alienate, or surrender the Bunkers to any third party or other Vessel.

H.3     In case of breach hereof by the Buyer, the Seller is entitled to take back the Bunkers without prior juridical intervention, without prejudice to all other rights or remedies available to the Seller.

H.4     In the event that the Bunkers have been mixed with other bunkers onboard the Vessel, the Seller shall have the right of lien to such part of the mixed Bunkers as corresponds to the quantity or nett value of Bunkers delivered.

H.5     In case the Bunkers, in part or full, are no longer present or can no longer be identified or distinct from other Bunkers, the Seller has the right to attach the Vessel and/or sister ship and/or any other assets of the Buyer (or the Owner of the Vessel), cf. Clause C.5) wherever situated in the world without prior notice.

H.6    Where title in and to the Bunkers delivered has passed to the Buyer and/or any third party before full payment has been made to the Seller, the Buyer shall grant a pledge in such Bunkers to the Seller. The Buyer shall furthermore grant a pledge in any other Bunkers present in the respective Vessel, including any mixtures of the delivered Bunkers and other bunkers. Such pledge will be deemed to have been given for any and all claims, of whatever origin and of whatever nature, that the Seller may have against the Buyer.

I.    PAYMENT

I.1    Payment shall be made by the Buyer as directed by the Seller within the period agreed in writing.

I.2    Payment shall be made in full, without set-off, counterclaim, deduction and/or discount free of bank charges to the bank account indicated by the Seller on the respective invoice(s).

I.3    Notwithstanding any agreement to the contrary, payment will be due immediately in case of bankruptcy, liquidation or suspension of payment or comparable situation of the Buyer, or arrest or assets and/or claims of the Buyer, or in case of any other situation, which in the sole discretion of the Seller, is deemed to adversely affect the financial position of the Buyer.

I.4    Payment shall be deemed to have been made on the date of which the Seller has received the full payment and such is available to the Seller. If payment falls due on a non-business day, the payment shall be made on or before the business day nearest to the due date. If the preceding and the succeeding business days are equally near to the due date, then payment shall be made on or before the preceding business day.

I.5    Any delay in payment shall entitle the Seller to interest at, presently, the rate of 2 (two) per cent per month or any part thereof without prejudice to any rights or remedies available to the Seller, and furthermore the Seller is entitled to charging administrational penalty fee of USD 1.00 per mton supplied, or the equality thereof in local currency, thus minimum penalty fee of USD 250.00.

I.6    Payments made by the Buyer shall at all times be credited in the following order: (1) costs, (2) interest and administrational fee, and (3) invoices in their order of age, also if not yet due.

I.7    All costs borne by the Seller in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of this agreement by the Buyer, shall be for the sole account of the Buyer.

I.8    The Seller shall at all times be entitled to require the Buyer to grant the Seller what the Seller deems to be proper security for the performance of all its obligations under the agreement. Failing immediate to provide such security upon request, the Seller shall be entitled to stop any further execution of any

agreement(s) between the parties until such time as the Buyer has provided the required security.

J.      CLAIMS

J.1     Any claim in regard to the quantity delivered must be notified by the Buyer or the Master of the Vessel to the Seller or its representative immediately after completion of delivery in the form of a statement of a letter of protest. If the Buyer fails to present such immediate notice of protest to the Seller such claim shall be deemed to have been waived and shall be barred for any later time.

J.2     Claims concerning the quality of the bunkers delivered shall be submitted to the Seller in writing within 15 (fifteen) days after delivery, failing which the rights to complain or claim compensation of whatever nature shall be deemed to have been waived and barred for all times.

J.3     The Buyer shall be obliged to make payment in full and fulfil all other obligations in accordance with the terms hereof, whether or not they have any claims or complaints.

J.4     In any case, claims of the Buyer shall be timebarred unless legal proceedings have been initiated before the competent court as set forth in Clause P hereof within 12 (twelve) months after the date of delivery or the date that delivery should have commenced pursuant to the written confirmation from the Seller.

K.      LIABILITY

K.1     The Seller shall not be liable for damages of whatever nature, including physical injury, nor for delay of delivery of Bunkers or services, no matter whether such damages or delay has been caused by fault or negligence on the side of the Seller. The Seller shall furthermore not be liable for damages or delay as described above when such damages or delay has been caused by the fault or negligence of its personnel, representatives or (sub)contractors.

K.2     Liabilities of the Seller for consequential losses or damages; direct or indirect, is excluded. In any event and notwithstanding anything to the contrary herein, liability of the Seller shall under no circumstances exceed the invoice value of the Bunkers supplied under the relevant agreement to the relevant Vessel.

K.3     The Buyer shall be liable towards the Seller and herewith undertakes to indemnify the Seller for any and all damages and/or costs suffered or otherwise incurred on the Seller due to a breach of contract and/or fault or neglect of the Buyers, its agents, Servants, (sub)contractors, representatives, employees and the officers, crews and/or other people whether or not onboard of the respective vessel(s). The Buyer furthermore undertakes to hold the Seller harmless in case of any third party institutes a claim of whatever kind against the Seller with direct or indirect relation to any agreement regulated

by these terms and conditions. Third party shall mean any other (physical or legal) person/company than the Buyer.

K.4   No servant or agent of the Seller (including independent (sub)contractors from time to time employed by the Seller) shall be liable to the Buyer for loss, damage or delay, while acting in the course of or in connection with its employment and/or agency for the Seller. Without prejudice to the above every exemption, limitation, condition and liberty herein contained, and every right, exemption from liability, defence or immunity of whatever nature applicable to the Seller or to which it is entitled hereunder shall also be available and shall extend to protect every such servant, representative or agent of the Seller acting as aforesaid.

L.   FORCE MAJEURE

L.1   The Seller or the Seller's supplier shall not be liable for any loss, damage or demurrage due to any delay or failure in performance (a) because of compliance with any order or request of any government authority, or person purporting to act therefore, or (b) when supply of the Bunkers or any facility of production, manufacture, storage, transportation, distribution or delivery contemplated by the Seller's supplier is interrupted, unavailable or inadequate for any cause whatsoever is not within the immediate control of the Seller or the Seller's supplier, including (without limitation) if such is caused by labour disputes, strikes, governmental intervention, wars, civil commotion, fire flood, earthquake, accident, storm, swell, ice, adverse weather or any act of God. The Seller or the Seller's supplier shall not be required to remove any such cause or replace any effected source or supply or facility if doing so shall involve additional expense or a deviation from the Seller's or the Seller's supplier's normal practices. The Seller, or the Seller's supplier shall not be required to make any deliveries omitted in accordance with this clause at any later time.

L.2   If the Buyer exercises reasonable diligence, the Buyer shall not be liable for failure to receive any particular delivery if prevented therefrom by force majeure. The Buyer shall indemnify the Seller or the Seller's supplier for any damage caused by the Buyer, the Buyer's agent or employees in connection with deliveries hereunder.

L.3   In the event that the Seller, as a result of force majeure, can only deliver a superior grade of bunkers, the Seller is entitled to offer the said grade, and the Buyer must accept delivery thereof and pay the applicable price.

M.   BREACH/CANCELLATION

M.1   The Seller shall have the option to immediately cancel the agreement in full or in part, or to store or produce the storage of the Bunkers in whole or in part for the account and risk of the Buyer and to charge the Buyer the expenses thereby incurred, or to hold the Buyer fully to the agreement, or take any other measures which the Seller deems appropriate, without prejudice to its

rights of indemnification, without any liability on the side of the Seller, in any (but not limited to) one of the following cases:

a)           when the Buyer, for whatever reason, fails to accept the Bunkers in part or in full at the place and time designated for delivery;

b)           when the Buyer fails in part or in full to comply with its obligations to pay any amount due to the Seller and/or provide security as set out herein;

c)           when, before the date of delivery, it is appearant in the opinion of the Seller that the financial position of the Buyer entails a risk for the Seller;

d)           when, in case of force majeure, the Seller is of the opinion that the execution of the agreement shall be cancelled.

M.2      The Seller may terminate any agreement with the Buyer in whole or in part, in its full discretion, upon the breach of any provisions hereof by the Buyer.


N.        SPILLAGE, ENVIRONMENTAL PROTECTION

N.1      If a spill occurs while the Bunkers are being delivered, the Buyer shall promptly take such action as is necessary to remove the spilled Bunkers and mitigate the effects of such spill. Without prejudice to the generality of the foregoing the Seller is hereby authorised in its full discretion at the expense of the Buyer to take such measures and incur such expenses (whether by employing its own resources or by contraction with others) as are necessary in the judgment of the Seller to remove the spilled Bunkers and mitigate the effects of such spill. The Buyer shall cooperate and render such assistance as is required by the Seller in the course of the action. All expenses, claims, costs, losses, damages, liability and penalties arising from spills shall be borne by the party that caused the spill by a negligent act or omission. If both parties have acted negligently, all expenses, claims, losses, damages, liability and penalties, shall be divided between the parties in accordance with the respective degree of negligence. The burden of proof to show the Seller's negligence shall be on the Buyer. The Buyer shall give the Seller all documents and other information concerning any spill or any program for the prevention thereof, that are required by the Seller, or are required by law or regulation applicable at the time and place of delivery.


O.        ARREST OF THE VESSEL

O.1      Notwithstanding anything to the contrary herein and without prejudice to any rights or remedies otherwise available to the Seller, the Buyer, by its acceptance of these conditions, expressly authorizes the Seller to arrest the Vessel in question, or any other Vessel owned or operated by the Buyer, under any applicable jurisdiction as security for the obligations of the Buyer. Should the Buyer fail to make any payment to the Seller immediately when due the Seller may dispose of such arrested Vessel whether by sale or otherwise as applicable under the relevant jurisdiction. Any costs or expenses of whatever kind incurred by the Seller in respect of such arrest shall be for the sole

account of the Buyer and shall be added to the claim for which arrest is made.

O.2    The Seller shall have the right to obtain a payment guarantee from the Owner as set forth in Clause C.5. If such guarantee has been given by the Owner and the Owner has not paid the outstanding amount to the Seller within 5 (five) business days after proper written notice has been received, the Seller has the right to arrest the Vessel or any other Vessel owned or operated by the Owner. The Seller shall further have the right to dispose of such Vessel as set forth in Clause O.1 above.

P.     LAW AND JURISDICTION

P.1    This agreement shall be governed and construed in accordance with the laws of Germany, save as provided in Clause P.2 below.

P.2    All disputes arising in connection with this agreement or any agreement relating hereto, save where the Seller decides otherwise in its sole discretion, shall be finally settled by arbitration in Hamburg in accordance with the German Arbitration Act as in effect from time to time.

P.3    For the sole benefit of the Seller it is further agreed that the Seller without prejudice to any rights hereunder of the Seller or any claim raised pursuant to Clause P.2 above have the right to proceed against the Buyer, any third party or the Vessel in such jurisdiction as the Seller in its sole discretion sees fit inter alia for the purpose of securing payment of any amount due to the Seller from the Buyer or the Owner (pursuant to a payment guarantee). In such circum- stances the proceedings shall be governed by the law (substantive and procedural) of such jurisdiction.

Q.     VALIDITY

Q.1    These terms and conditions shall be valid and binding for all offers, quotations, prices and deliveries made by the O.W. Bunker Group, any associated company, representative or agent as of October 25, 2002, or at any later date.

# EXHIBIT 3



**M/V  AUTO BANNER**
AND/OR OWNERS/CHARTERERS

| | | | |
|---|---|---|---|
| ERSAL European Red Sea African Lines Ltd. c/o All Trans S.A.L. | **DATE OF INVOICE** | : | **25-03-09** |
| Emir Bechir Street, Building 1470 | **INVOICE NO** | : | **119-13710** |
| Bloc A, 6th Floor | | | |
| Beirut, 2026 1210 | ORDER NO. | : | 119-13338 |
| Lebanon | | | |
| | DATE OF SUPPLY | : | 19-03-09 |

PORT:  ALGECIRAS

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 450,052  MT | Fueloil 180 CST | 316,00  MT | 142.216,43 |
| 45,003  MT | Gasoil 0,1% | 444,00  MT | 19.981,33 |

Nicht steuerbare Umsätze im Ausland / Non-taxable turnover abroad

| | | | |
|---|---|---|---|
| Your VAT-ID No. / USt-ID No. | | | |
| Our VAT-ID No. / USt-ID No.   DE814847077 | Total | USD | 162.197,76 |

The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT:**   30 days from date of delivery
With value date not later than DUE DATE or previous working day when it is a holiday.
Late payment is charged with an interest of the invoiced amount
of 2% pcm, as per our Terms and Conditions.

## DUE ON 18-04-09 AT THE LATEST

**BANK:**        Nordea Bank Danmark A/S

**ACCOUNTS:**   Acc. No.: 2100 5005 934674 (USD)
                S.W.I.F.T.: NDEADKKK

                IBAN USD - DK9220005005934674

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account.

WRIST WORLDWIDE TRADING GMBH
Neumühlen 11

D-22763 Hamburg

Phone: +49 40 3255900
Fax: +49 40 330471

Tax No. / Steuer Nr. 74/813/24658

E-mail: hamburg@wristbunker.de
Internet: http://www.owbunker.com

Managing director: Marten Skou
HR B 100091

The WRIST group of companies
offers a wide range of services to
the marine industry world wide.



M/V  AUTO BANNER
AND/OR OWNERS/CHARTERERS

ERSAL European Red Sea African
Lines Ltd. c/o All Trans S.A.L.
Emir Bechir Street, Building 1470
Bloc A, 6th Floor
Beirut, 2026 1210
Lebanon

| | | |
|---|---|---|
| DATE OF INVOICE | : | 16-04-09 |
| INVOICE NO | : | 119-13867 |
| ORDER NO. | : | 119-13527 |
| DATE OF SUPPLY | : | 01-04-09 |

PORT: JEDDAH

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 192,000  MT | Fueloil 180 CST | 355,00  MT | 68.160,00 |

Nicht steuerbare Umsätze im Ausland / Non-taxable turnover abroad

Your VAT-ID No. / USt-ID No.
Our VAT-ID No. / USt-ID No.    DE814847077          Total          USD          68.160,00

The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT:**   30 days from date of delivery
With value date not later than DUE DATE or previous working day when it is a holiday.
Late payment is charged with an interest of the invoiced amount
of 2% pcm, as per our Terms and Conditions.

## DUE ON 01-05-09 AT THE LATEST

BANK:        Nordea Bank Danmark A/S

ACCOUNTS:    Acc. No.: 2100 5005 934674 (USD)
             S.W.I.F.T.: NDEADKKK

             IBAN USD - DK9220005005934674

Per telegraphic transfer directly to our account without deduction      ~&f1Y~8f2X~8i50Z
of bank charges which are for buyers account.

WRIST WORLDWIDE TRADING GMBH
Neumühlen 11

D-22763 Hamburg

Phone: +49 40 3255900
Fax: +49 40 330471

Tax No. / Steuer Nr. 74/813/24658

E-mail: hamburg@wristbunker.de
Internet: http://www.owbunker.com

Managing director: Morten Skou
HR B 100091

The WRIST group of companies
offers a wide range of services to
the marine industry world wide.



M/V  AUTO ATLAS
AND/OR OWNERS/CHARTERERS

ERSAL European Red Sea African
Lines Ltd. c/o All Trans S.A.L.
Emir Bechir Street, Building 1470
Bloc A, 6th Floor
Beirut, 2026 1210
Lebanon

| | | |
|---|---|---|
| DATE OF INVOICE | : | 16-04-09 |
| INVOICE NO | : | 119-13868 |
| ORDER NO. | : | 119-13526 |
| DATE OF SUPPLY | : | 04-04-09 |

PORT: BOSTON

| Quantity supplied | | Quality/description | Price/per | | Invoice amount |
|---|---|---|---|---|---|
| 449,890 | MT | Fueloil 180 CST | 389,00 | MT | 175.007,21 |
| 449,890 | MT | Barging | 13,58 | MT | 6.109,51 |
| 1,000 | LPS | MA Oil Spill | 58,16 | LPS | 58,16 |
| 1,000 | LPS | Federal Oil Spill | 232,64 | LPS | 232,64 |

Nicht steuerbare Umsätze im Ausland / Non-taxable turnover abroad

| Your VAT-ID No. / USt-ID No. | | | | | |
|---|---|---|---|---|---|
| Our VAT-ID No. / USt-ID No. | DE814847077 | | Total | USD | 181.407,52 |

The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT:**   30 days from date of delivery
With value date not later than DUE DATE or previous working day when it is a holiday.
Late payment is charged with an interest of the invoiced amount
of 2% pcm, as per our Terms and Conditions.

## DUE ON 04-05-09 AT THE LATEST

BANK:   Nordea Bank Danmark A/S

ACCOUNTS:   Acc. No.: 2100 5005 934674 (USD)
S.W.I.F.T.: NDEADKKK

IBAN USD - DK9220005005934674

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account.   ~8f1Y~8f2X~8l50Z

WRIST WORLDWIDE TRADING GMBH
Neumühlen 11

D-22763 Hamburg

Phone: +49 40 3255900
Fax: +49 40 330471

Tax No. / Steuer Nr. 74/813/24658

E-mail: hamburg@wristbunker.de
Internet: http://www.owbunker.com

Managing director: Morten Skou
HR B 100091

The WRIST group of companies
offers a wide range of services to
the marine industry world wide.



M/V  AUTO ATLAS
AND/OR OWNERS/CHARTERERS

ERSAL European Red Sea African
Lines Ltd. c/o All Trans S.A.L.
Emir Bechir Street, Building 1470
Bloc A, 6th Floor
Beirut, 2026 1210
Lebanon

| | | |
|---|---|---|
| DATE OF INVOICE | : | **17-04-09** |
| INVOICE NO | : | **119-13873** |
| ORDER NO. | : | 119-13526 |
| DATE OF SUPPLY | : | 04-04-09 |

PORT: BOSTON

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 1,000  LPS | EXTRA COSTS AS PER ENCLOSU | 14.000,00  LPS | 14.000,00 |

Nicht steuerbare Umsätze im Ausland / Non-taxable turnover abroad

| | | | | |
|---|---|---|---|---|
| Your VAT-ID No. / USt-ID No. | | | | |
| Our VAT-ID No. / USt-ID No. | DE814847077 | Total | USD | **14.000,00** |

The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT:**  30 days from date of delivery
With value date not later than DUE DATE or previous working day when it is a holiday.
Late payment is charged with an interest of the invoiced amount
of 2% pcm, as per our Terms and Conditions.

## DUE ON 04-05-09 AT THE LATEST

**BANK:**    Nordea Bank Danmark A/S

**ACCOUNTS:**    Acc. No.: 2100 5005 934674 (USD)
S.W.I.F.T.: NDEADKKK

IBAN USD - DK9220005005934674

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account.

ப&f1Yᴨ&f2Xப&ப50Z

WRIST WORLDWIDE TRADING GMBH
Neumühlen 11

D-22763 Hamburg

Phone: +49 40 3266900
Fax: +49 40 330471

Tax No. / Steuer Nr. 74/813/24658

E-mail: hamburg@wristbunker.de
Internet: http://www.owbunker.com

Managing director: Morten Skou
HR B 100091

The WRIST group of companies
offers a wide range of services to
the marine industry world wide.



M/V  AUTO BANNER
AND/OR OWNERS/CHARTERERS

ERSAL European Red Sea African
Lines Ltd. c/o All Trans S.A.L.
Emir Bechir Street, Building 1470
Bloc A, 6th Floor
Beirut, 2026 1210
Lebanon

| | | | |
|---|---|---|---|
| DATE OF INVOICE | : | 16-04-09 |
| INVOICE NO | : | 119-13869 |
| ORDER NO. | : | 119-13525 |
| DATE OF SUPPLY | : | 10-04-09 |

PORT: FUJAIRAH

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 924,000  MT | Fueloil 180 CST | 356,00  MT | 328.944,00 |
| 43,500  MT | Gasoil | 555,00  MT | 24.142,50 |

Nicht steuerbare Umsätze im Ausland / Non-taxable turnover abroad

Your VAT-ID No. / USt-ID No.
Our VAT-ID No. / USt-ID No.   DE814847077      Total      USD      353.086,50

The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT:**   30 days from date of delivery
With value date not later than DUE DATE or previous working day when it is a holiday.
Late payment is charged with an interest of the invoiced amount
of 2% pam, as per our Terms and Conditions.

## DUE ON 10-05-09 AT THE LATEST

**BANK:**      Nordea Bank Danmark A/S

**ACCOUNTS:**    Acc. No.: 2100 5005 934674 (USD)
S.W.I.F.T.: NDEADKKK

IBAN USD - DK9220005005934674

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account.

~&f1Y~&f2X~&f5OZ

WRIST WORLDWIDE TRADING GMBH
Neumühlen 11
D-22763 Hamburg

Phone: +49 40 3255900
Fax: +49 40 330471

Tax No. / Steuer Nr. 74/813/24858

E-mail: hamburg@wristbunker.de
Internet: http://www.owbunker.com

Managing director: Morten Skou
HR B 100091

The WRIST group of companies
offers a wide range of services to
the marine industry world wide.



M/V AUTO ATLAS
AND/OR OWNERS/CHARTERERS

ERSAL European Red Sea African
Lines Ltd. c/o All Trans S.A.L.
Emir Bechir Street, Building 1470
Bloc A, 6th Floor
Beirut, 2026 1210
Lebanon

| | | |
|---|---|---|
| DATE OF INVOICE | : | **08-05-09** |
| INVOICE NO | : | **119-14030** |
| ORDER NO. | : | 119-13528 |
| DATE OF SUPPLY | : | 23-04-09 |

PORT: COTONOU

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 29,367 MT | Fueloil 180 CST | 510,00 MT | 14.977,17 |
| 49,592 MT | Gasoil | 660,00 MT | 32.730,72 |

Nicht steuerbare Umsätze im Ausland / Non-taxable turnover abroad

Your VAT-ID No. / USt-ID No.
Our VAT-ID No. / USt-ID No.   DE814847077         Total        USD        47.707,89

The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT:**  30 days from date of delivery
With value date not later than DUE DATE or previous working day when it is a holiday.
Late payment is charged with an interest of the invoiced amount
of 2% pcm, as per our Terms and Conditions.

## DUE ON 23-05-09 AT THE LATEST

**BANK:**        Nordea Bank Danmark A/S

**ACCOUNTS:**   Acc. No.: 2100 5005 934674 (USD)
                S.W.I.F.T.: NDEADKKK

                IBAN USD - DK9220005005934674

Per telegraphic transfer directly to our account without deduction        ~8/1Y~8/2X~8/50Z
of bank charges which are for buyers account.

WRIST WORLDWIDE TRADING GMBH
Neumühlen 11

D-22763 Hamburg

Phone: +49 40 3255900
Fax: +49 40 330471

Tax No. / Steuer Nr. 74/813/24858

E-mail: hamburg@wristbunker.de
Internet: http://www.owbunker.com

Managing director: Morten Skou
HR B 100091

The WRIST group of companies
offers a wide range of services to
the marine industry world wide.