**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NOT FOR PUBLICATION

_____

| | |
|---|---|
| WRIST WORLDWIDE TRADING GMBH, | : |
| | : |
| | : Civil Action No. 10-2326 (PGS-ES) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **OPINION** |
| MV AUTO BANNER, et al., | : |
| | : |
| | : |
| Defendants. | : |
| | : |

_____

Pending before this Court is Plaintiff Wrist Worldwide Trading GMBH's ("Plaintiff") motion to amend paragraphs eight and eighteen of Plaintiff's verified complaint (*See* Docket Entry No. 1, the "Verified Complaint"). (Docket Entry No. 16, Notice of Motion dated September 1, 2010 (the "Motion"). Having considered the parties' submissions, the Court **GRANTS** the Motion in part and **DENIES** the Motion without prejudice in part.

**I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

On May 7, 2010, Plaintiff filed the Verified Complaint against Defendant MV Auto Banner, *in rem*, and Defendant STX Pan Ocean Co. Ltd. ("Defendant Pan Ocean"), the owner of the MV Auto Banner. (Docket Entry No. 1). Defendants filed an answer on June 21, 2010 (Docket Entry No. 11), and on August 3, 2010, the Court entered an initial pre-trial scheduling order which set various deadlines for discovery, a briefing schedule for the instant Motion, and also indicated that

the parties had already exchanged Rule 26 disclosures. (Docket Entry No. 14). On September 1, 2010, Plaintiff filed the instant Motion along with a supporting brief and exhibits. (Docket Entry No. 17, Memorandum of Law in Support of Motion to Amend the Verified Complaint ("Pl.'s Moving Br.")). On September 22, 2010, Defendant Pan Ocean filed a brief in opposition (Docket Entry No. 19, "Def.'s Opp. Br.) and on September 29, 2010, Plaintiff filed its reply brief (Docket Entry No. 20, "Pl.'s Reply Br.").[1]

This action arises out of Plaintiff's alleged act of supplying fuel oil and gas oil ("Bunkers") in March and April of 2009 to two ocean-going vessels, the MV Auto Banner and the MV Auto Atlas,[2] which are purportedly owned and managed by Defendant Pan Ocean. (Verified Compl. ¶¶ 5-7). At the time Plaintiff supplied the Bunkers the vessels were on charter to a third-party. (*Id*. at ¶ 8). Plaintiff alleges that it was not paid for the Bunkers (Verified Compl. ¶¶ 12-13), and, as a result, has brought an *in rem* action against one of the vessels, Defendant MV Auto Banner, and an *in personam* action against the owner of the MV Auto Banner, Defendant Pan Ocean. In sum,

---

[1] Defendants filed a motion for leave to file a sur-reply on October 1, 2010 (Docket Entry No. 22-1) and Plaintiff filed a response on October 7, 2010 (Docket Entry No. 24). Indeed, the Court has reviewed and considered these additional submissions.

[2] While Plaintiff alleges it contracted to supply Bunkers to both vessels, the present action is solely against the MV Auto Banner and its owner, Pan Ocean. A separate action was brought against the MV Auto Atlas, *in rem*, and Pan Ocean, *in personam*, in the District of Maryland, Northern Division. *Wrist Worldwide Trading GMBH v. M/V Auto Atlas, apparel, freights, etc., in rem and European Red Sea African Lines Ltd., c/o All Trans S.A.L.,* 10-cv-1369 (WDQ). Plaintiff has brought the two actions in separate jurisdictions because the MV Auto Banner was found for arrest in New Jersey and, therefore, is under this Court's jurisdiction, while the MV Auto Atlas was found for arrest in Maryland, which thus subjects it to jurisdiction in Maryland. *See Moyer v. Wrecked and Abandoned Vessel, known as Andrea Doria*, 836 F. Supp. 1099, 1104 (D.N.J. 1993) ("[F]or a court to assert jurisdiction over a vessel, the presence of the vessel or other res within the court's territorial confines is required.").

Plaintiff alleges that Defendant Pan Ocean is contractually and/or otherwise liable for the unpaid balance of the Bunkers.  Specifically, Plaintiff alleges that: (1) Defendant Pan Ocean, as the owner of the vessels, is contractually liable for the unpaid balance of the Bunkers; (2) Defendant Pan Ocean is liable under an agency theory because ERSAL, who allegedly chartered the vessels from Defendant Pan Ocean, ordered and was supplied with the Bunkers; (3) Defendant Pan Ocean was a third-party beneficiary of the Bunkers; and/or (4) Defendant Pan Ocean was unjustly enriched by receiving the benefits of the Bunkers.  (Verified Compl. ¶¶ 16-20).

## II.  PROPOSED AMENDMENTS

The Motion seeks to amend paragraphs eight and eighteen of the Verified Complaint (the "Proposed Amendments").  Specifically, Plaintiff seeks to amend the Verified Complaint to: (1) amend paragraph eight to allege that the charterer of the vessel was "Litan International, S.A. ("Litan"), which was owned and guaranteed by the Abu Rashed Group"; (2) amend paragraph eight to add an allegation that the members of the Abu Rashed Group [3] "operated as a unit without regard to their corporate separateness, with Litan being merely a shell corporation dominated and controlled by the Abu Rashed Group. . . ." (the "Proposed Alter Ego Allegation"); and (3) allege that Defendant Pan Ocean is liable for the Bunkers under an agency theory because the Abu Rashed Group, as the alter ego of Litan, acted as an agent on behalf of Defendant Pan Ocean when ordering the Bunkers (the "Proposed Agency Claim") (Pl.'s Moving Br. at 2-3).

---

[3]  According to paragraph eight in its amended form, the members of the Abu Rashed group include ERSAL, Altrans SAL, All Trans Shipping and Trading Company, AAA Shipping Lines. Corp., and Cotrans GMBH.  (Pl.'s Moving Br. at 2).

## III.  DISCUSSION

Fed. R. Civ. P. 15(a) allows a party to amend its pleading by leave of court when justice so requires.  Leave to amend pleadings is to be freely given.  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The decision to grant leave to amend rests within the discretion of the court.  *Foman*, 371 U.S. at 182.  Pursuant to *Foman*, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment.  *Id*.  "Only when these factors suggest that amendment would be 'unjust' should the court deny leave."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (internal citations omitted).  Here, Defendant Pan Ocean argues that the Motion should be denied on the basis of Plaintiff's undue delay and bad faith, as well as undue prejudice to Defendant Pan Ocean.  Moreover, Defendant Pan Ocean also argues that the Motion should be denied because the Proposed Amendments are futile.  (Def.'s Opp. Br. at 1).  The Court will discuss each argument in turn.

**A.     Undue Delay, Undue Prejudice and Bad Faith or Dilatory Motive**

   **i.     Undue Delay**

Defendant Pan Ocean argues that Plaintiff unduly delayed in bringing the Motion because Plaintiff waited four months from the time it filed the Verified Complaint to file the instant Motion.  (Def.'s Opp. Br. at 5).  Defendant Pan Ocean contends that all of the information contained in the Proposed Amendments have been within the ken of Plaintiff since March or April 2009, when the Bunkers at issue were allegedly supplied to the vessels.  (*Id.*).

Case law provides that "there is no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Ford Motor Co. v. Edgewood Prop., Inc.*, Civ. Action No. 06-1278, 2010 U.S. Dist. LEXIS 130866, at *16 (D.N.J. Dec. 10, 2010)(*citing Coulson v. Town of Kearney*, Civ. Action No. 07-5893, 2010 U.S. Dist. LEXIS 3711, *8 (D.N.J. Jan. 19, 2010)). In determining whether the instant Motion was the result of undue delay, this Court must examine Plaintiff's reasons for not moving to amend sooner. *AstraZeneca AB v. Ranbaxy Pharms., Inc.*, Civ. No. 05-5553, 2008 WL 5272018, at *6 (D.N.J. Dec. 15, 2008). Moreover, delay alone does not justify denying a motion to amend. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, only when the delay places an unwarranted burden on the court or on the opposing party is a denial on the basis of delay appropriate. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

Here, the Court finds that Plaintiff did not unduly delay in seeking to amend the Verified Complaint. Plaintiff was served with Defendant Pan Ocean's initial disclosures on July 30, 2010. (*See* Docket Entry No. 18-3, Defendant Pan Ocean's Rule 26 Disclosures). In the initial disclosure, Defendant Pan Ocean informed Plaintiff that the vessels were in fact on charter to Litan, not ERSAL, and that the Abu Rashed Group is the owner and guarantor of Litan. (*See Id.* at 4, 6). On August 3, 2010, the Court conducted an initial scheduling conference, and, at the request of Plaintiff, set forth a briefing schedule for the instant Motion. (Docket Entry No. 14 at ¶ 2). Under these facts,

the Court cannot find that Plaintiff unduly delayed because the Motion was filed approximately one month after its discovery of the facts that comprise the Proposed Amendments.

### ii.     Undue Prejudice

Defendant Pan Ocean further argues that it will be unduly prejudiced if the Court were to grant the Motion because Plaintiff has filed an action against Defendant Pan Ocean in another jurisdiction claiming identical damages.[4] (Def.'s Opp. Br. at 7-8). Defendant Pan Ocean argues that it should not be required to respond to additional theories contained in the Proposed Amendments in light of the fact that they are already currently defending two lawsuits involving the same claims in different jurisdictions. (*Id*. at 8). Plaintiff argues that Defendant Pan Ocean will not suffer undue prejudice because the Proposed Amendments simply conform to the facts that have been uncovered during discovery and include allegations in which Defendant Pan Ocean is already familiar with. (Pl.'s Reply Br. at 3-4).

"Prejudice under [R. 15(a)] means undue difficulty in prosecuting a lawsuit as a result of a change in tactics or theories on the part of the other party." *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969). The court must "focus on the hardship to the defendants if the amendment were permitted" and considers "whether allowing an amendment would result in additional discovery, cost and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273.

---

[4]  The other action is pending in the United States District Court for the District of Maryland. *See* fn. 2, *supra.*

Here, the Court finds that Defendant Pan Ocean would not suffer undue prejudice if the Motion is granted. The fact that Defendant Pan Ocean must defend against actions in both the District of Maryland and here is not a basis for this Court to find that prejudice is undue. In fact, Plaintiff was permitted to bring two separate actions in New Jersey and Maryland because the MV Auto Banner was arrested in New Jersey, while the MV Auto Atlas was arrested in Maryland. (*supra, n. 1*). In addition, the Court is hard-pressed to extract a finding that Defendant will suffer undue prejudice in defending against new theories relating to the Abu Rashed Group when Defendant Pan Ocean is involved in other litigation with the Abu Rashed Group in the Southern District of New York. (*See* Docket Entry No. 18-4, Exh. 4, *STX Pan Ocean Co., Ltd. v. Litan Int'l*, Civ. Action No. 09-7692). In sum, the Court is not convinced that Defendant Pan Ocean will suffer undue prejudice by having to defend against potential new theories in Plaintiff's case. At the time the Motion was filed, discovery had only recently commenced, and no trial date has since been set. Accordingly, Defendant Pan Ocean will not suffer undue prejudice if the Court grants the Motion.

### iii.     Bad Faith or Dilatory Motive

Defendant Pan Ocean also argues that the Proposed Amendments are a product of Plaintiff's bad faith and dilatory motive. (Def.'s Opp. Br. at 7). In support, Defendant Pan Ocean argues that paragraphs four, six, seven and sixteen of Plaintiff's proposed amended complaint contain statements that Plaintiff knows are inaccurate. (*Id.*). Plaintiff, however, refutes Defendants' bad faith objections because paragraphs four, six, seven and sixteen of the proposed amended complaint remain unchanged from the Verified Complaint. (Pl.'s Reply Br. at 10).

Here, the Court agrees with Plaintiff that the Proposed Amendments are not a product of bad

faith or dilatory motive. In short, the Court is not inclined to extract a finding of bad faith merely from the disputed accuracy of portions of the operative pleading that remain unchanged.[5] Thus, the Court does not find that Plaintiff's Motion is based on bad faith or dilatory motive.

**B.    Futility**

Defendant Pan Ocean argues that the Proposed Amendments are futile because Plaintiff has failed to allege any specific facts and has simply alleged conclusory statements. (Def.'s Opp. Br. at 5-6). Plaintiff argues that futility is not a proper basis for objection because the allegations themselves are not meant to state an independent claim or cause of action such that a Rule 12(b)(6) analysis is even possible. (Pl.'s Reply Br. at 4). Plaintiff asserts that the Proposed Alter Ego Allegation and the Proposed Agency Claim are not directed against Defendant Pan Ocean, and instead simply seeks to describe the relationship between Litan and the Abu Rashed Group. (*Id.*).

An amendment is considered futile if it advances a claim that is legally insufficient on its face. Courts may properly deny a motion to amend when the amendment would not withstand a motion to dismiss. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). With respect to futility, "[it is] clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re NAHC, Inc., Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). In determining whether an amendment is insufficient on its face, the court employs the Rule 12(b)(6) motion to dismiss standard. *Burlington Coat Factory*, 114 F.3d at 1434.

---

[5] The Court notes that Defendants also argue that the Motion is a product of Plaintiffs' bad faith because paragraph eighteen in its proposed form is "clearly inaccurate;" the Court, however, will discuss paragraph eighteen at length in the "futility" section.

The court must accept all factual allegations as true "as well as the reasonable inferences that can be drawn from them." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001).

When a plaintiff asserts a claim, it must provide sufficient notice to defendants of the factual allegations that entitle them to relief as articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*. The Court stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007)(citations omitted).

Here, the Proposed Amendments seek to correct and add the following allegations to the Verified Complaint: (1) correct the named charterer in paragraph eight from ERSAL to Litan International, S.A. ("Litan"), which was owned and guaranteed by the Abu Rashed Group"; (2) add allegations of an alter ego relationship between Litan and the Abu Rashed Group to paragraph 8; and (3) change paragraph eighteen's agency claim against Defendant Pan Ocean to an agency claim based on the alter ego theory that is set forth in the proposed version of paragraph eight.

        i.        **Paragraph Eight – Change of Named Charterer**

Plaintiff seeks to substitute "Litan International, S.A. ('Litan'), which was owned and guaranteed by the Abu Rashed Group" in place of "European Red Sea African Lines, Ltd. ('ERSAL')" in the first sentence of paragraph eight. (Pl.'s Moving Br. at 2). This amendment does not add a new cause of action, and merely conforms the Verified Complaint to facts that were brought to light during discovery. Moreover, Defendant Pan Ocean

presents no objection to this specific portion of amended paragraph eight. As a result, the Court will permit Plaintiff to amend paragraph eight to name the correct charterer, Litan, which is owned and guaranteed by the Abu Rashed Group.

### ii.  Paragraph Eight - Allegations of Alter Ego Relationship

Defendant Pan Ocean argues that Plaintiff's attempt to add allegations of an alter ego relationship between Litan and the Abu Rashed Group (the "Proposed Alter Ego Allegation") should be denied as futile because Plaintiff has failed to allege facts to support the conclusory statements. (Defs.' Opp. Br. at 5-6). The Third Circuit has emphasized the Supreme Court's reaffirmation that Rule 8 still only requires a short and plain statement of claims and their factual underpinnings. *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008). However, there is now a "plausibility paradigm" for evaluating the sufficiency of complaints. *Id.* at 230. "[F]actual allegations in the complaint must not be 'so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.'" *Umland v. PLANCO Fin. Serv.'s, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Phillips*, 515 F.3d at 233). Courts are still required to read complaints to determine if a plaintiff may be entitled to relief under any reasonable reading. *See Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). Paragraph eight, in its amended form would read:

> [a]t the time the Bunkers were supplied, the Vessels were, on information and belief, on charter to Litan International, S.A. ('Litan'), which was owned and guaranteed by the Abu Rashed Group. The members of the Abu Rashed Group also included European Red Sea African Lines Ltd. (ERSAL), Altrans SAL, All Trans Shipping and Trading Company, AAA Shipping Lines Corp. and Cotrans GMBH. These entities were operated as a unit without regard to their corporate

>separateness, with Litan being merely a shell corporation dominated and controlled by the Abu Rashed Group and its members and/or a trade name, alias, <u>alter ego</u>, paying agent, receiving agent and/or joint venturer of the Abu Rashed Group and its members. The Abu Rashed Group and its members, including ERSAL, Mr. Imad Elia and Mr. Mohammed Hamad as agents and/or employees and/or members and/or managers and/or officers of the Abu Rashed Group and its members, managed the Vessels nominally on charter to Litan; and/or ERSAL, Mr. Imad Elia and/or Mr. Mohammed Hamad were officers and/or agents and/or managers and/or employees of Litan and were appointed to manage the Vessels on charter to Litan.

(Pl.'s Moving Br. at 2-3) (emphasis added).

The Third Circuit has identified factors to consider in an alter ego analysis, including:

>gross undercapitalization . . . 'failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.'

*Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002) (quoting *Am. Bell Inc. v. Fed'n of Tel. Workers*, 736 F.2d 879, 886 (3d Cir. 1984)).[6]

Here, Plaintiff's Proposed Alter Ego Allegation simply states that, "[t]hese entities were operated as a unit without regard to their corporate separateness, with Litan merely being a shell corporation dominated and controlled by the Abu Rashed Group. . . . The Abu Rashed Group and

---

[6] Defendants argue that Plaintiff has cited to irrelevant New Jersey state law concerning "alter ego" by citing to *Bd. of Trs. of Teamsters Local 863 Pension Fund*, 296 F.3d at 171, stating that "this is an admiralty and maritime case pursuant to Rule 9(h) governed by federal maritime law." (Pl.'s Reply Br., pg. 5). The Court agrees that admiralty cases such as this are governed by Fed. R. Civ. P. 9(h), and, therefore, must look to Third Circuit precedent. The Court finds that the alter ego factors outlined in *Bd. of Trs. of Teamsters Local 863 Pension Fund*, while state law principles, have been adopted by the Third Circuit and, therefore, have become Third Circuit precedent. As such, the Court will consider the alter ego factors outlined in *Bd. of Trs. of Teamsters Local 863 Pension Fund* in the present admiralty case.

11

its members . . . managed the Vessels nominally on charter to Litan. . . ." (Pl.'s Moving Br. at 2-3). In its reply brief, although Plaintiff proposes additional sub-paragraphs that would purportedly bolster the alter ego allegations, this Court is directed to look only to the pleading when determining whether an allegation will survive a Rule 12(b)(6) analysis. *See Pharm. Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 765 (D.N.J. 2000); *see also Burlington Coat Factory*, 114 F.3d at 1426 ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). Accordingly, the Court's futility analysis of the Proposed Alter Ego Allegation is constrained to its form as set forth in a Plaintiff's proposed amended complaint.

As such, the Court finds that Plaintiff has failed to allege sufficient facts outlined by the Third Circuit to support an alter ego claim. Plaintiff's Proposed Alter Ego Allegation presumes the legal conclusion that Litan is the alter ego of the Abu Rashed Group, and fails to speak to the factors that the Third Circuit has identified in determining whether a subsidiary is a mere instrumentality of the parent. Plaintiff does not allege that Litan was grossly undercapitalized, failed to observe corporate formalities, had non-functioning directors, or that it commingled funds with the Abu Rashed Group. Plaintiff simply asserts in a conclusory fashion that Litan is a shell corporation dominated and controlled by the Abu Rashed Group. (Pl.'s Moving Br. at 2-3). Accordingly, the Proposed Alter Ego Allegation is futile as it would not withstand a motion to dismiss. As such, Plaintiff's Motion to amend paragraph eight to add an alter ego allegation is denied without prejudice.

### iii. Paragraph Eighteen – Modification of Agency Claim to Agency Claim Based on an Alter Ego Theory

As for paragraph eighteen, in its proposed form Plaintiff claims that Defendant Pan Ocean is liable for the unpaid balance of the Bunkers because "the Abu Rashed Group and its members (including Litan, ERSAL and its managers and/or officers and/or employees and/or agents Mr. Imad Elia and Mr. Mohammed Hamad) acted as agent in ordering the bunkers on behalf of the Vessels and their Owner. . . ." ("Plaintiff's Proposed Agency Claim") (Pl.'s Moving Br. at 3). Defendant Pan Ocean argues that Plaintiff's Proposed Agency Claim is also futile because it is not supported by any factual allegations. (Def.'s Opp. Br. at 6).

Accordingly, in light of the Court's analysis with respect to the Proposed Alter Ego Allegation, Plaintiff's Proposed Agency Claim must also be deemed futile. Plaintiff seeks to change its agency theory of liability in paragraph eighteen from claiming that ERSAL acted as Defendant Pan Ocean's agent, to the allegation that the Abu Rashed Group, the parent company of the correct charterer (Litan), acted as an agent for Defendant Pan Ocean when the Bunkers were supplied to Litan. As such, because Plaintiff's Proposed Agency Claim is premised on the Proposed Alter Ego Allegation, it too must fail. Therefore, Plaintiff's Motion to amend paragraph eighteen is also denied without prejudice.

### IV. CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's Motion in part and denies without prejudice in part. With respect to amending the first sentence of paragraph eight, the Motion is **GRANTED**. With respect to amending paragraphs eight and eighteen to include allegations of an

alter ego relationship and an agency claim based on alter ego, the Motion is **DENIED** without prejudice. Within ten day of entry of this Court's opinion and order, Plaintiff may file a new motion to amend that utilizes the language that is set forth in the Reply Brief (*See* Pl.'s Reply Br. at 6-7), as the addition of such factors to a proposed amended complaint would likely survive a futility objection.

                                                  s/Esther Salas
                                                  ESTHER SALAS
                                                  UNITED STATES MAGISTRATE JUDGE