# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

<u>NOT FOR PUBLICATION</u>

---

|  |  |  |
|---|---|---|
| WRIST WORLDWIDE TRADING | : | |
| GMBH, | : | |
| | : | Civil Action No. 10-2326 (ES)(CLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **<u>OPINION</u>** |
| MV AUTO BANNER, et al., | : | |
| | : | |
| Defendants. | : | |

---

**<u>WALDOR, United States Magistrate Judge</u>**

Pending before this Court is plaintiff Wrist Worldwide Trading GMBH's ("Plaintiff")
second motion to amend paragraphs eight, nine, and nineteen of Plaintiff's amended verified
complaint ("Amended Verified Complaint").  (Dkt. No. 34, the "Second Motion to Amend").
Having considered the parties' submissions, the Court **GRANTS** the Second Motion to Amend
in part and **DENIES** the Second Motion to Amend without prejudice in part.

## I. Procedural History and Factual Background

Because we write only for the parties, we assume their familiarity with the facts. More detailed factual background is set forth in the Honorable Esther Salas's thorough opinion rendered on March 30, 2011. (Dkt. No. 32, <u>Wrist Worldwide Trading GMBH v. MV Auto Banner, et al.</u>, No. 10-2326, 2011 WL 1321794 (D.N.J. Mar. 30, 2011)). As detailed by Judge Salas, this action arises out of Plaintiff's alleged act of supplying fuel oil and gas oil ("Bunkers") in March and April of 2009 to two ocean-going vessels ("Vessels"), the MV Auto Banner and the MV Auto Atlas, which are purportedly owned and managed by Defendant STX Pan Ocean Co. Ltd. ("Defendant Pan Ocean"). <u>Id.</u> At the time Plaintiff supplied the Bunkers, the Vessels were on charter to a third-party, Litan International S.A., an entity allegedly owned and guaranteed by the Abu Rashed Group. <u>Id.</u> Plaintiff alleges that it was not paid for the Bunkers and, as a result, has brought an *in rem* action against one of the Vessels, Defendant MV Auto Banner, and an *in personam* action against the owner of the MV Auto Banner, Defendant Pan Ocean. <u>Id.</u>

On May 7, 2010, Plaintiff filed a verified complaint ("Verified Complaint") against Defendant MV Auto Banner, *in rem*, and Defendant Pan Ocean, the owner of the MV Auto Banner. (Dkt. No. 1). On September 1, 2010, Plaintiff filed an initial Motion to Amend the Verified Complaint. (Dkt No. 16, "First Motion to Amend"). The First Motion to Amend sought to amend the Verified Complaint to: (1) amend paragraph eight to allege that the charterer of the vessel was "Litan International, S.A. ("Litan"), which was owned and guaranteed by the Abu Rashed Group;" (2) amend paragraph eight to add an allegation that the members of the Abu Rashad Group "operated as a unit without regard to their corporate separateness, with Litan being

merely a shell corporation dominated and controlled by the Abu Rashed Group . . .;" and (3) allege that Defendant Pan Ocean is liable for the Bunkers under an agency theory because the Abu Rashed Group acted as an agent on behalf of Defendant Pan Ocean when ordering the Bunkers.  (First Motion to Amend at 2-3).

On March 30, 2011, the Honorable Esther Salas entered an opinion granting in part and denying in part the First Motion to Amend.  (Dkt. No. 32).  First, Judge Salas granted Plaintiff's request to correct the named charterer in paragraph eight from European Red Sea African Lines Ltd. ("ERSAL") to Litan.  However, Judge Salas found that Plaintiff failed to allege sufficient facts under Third Circuit precedent to support Plaintiff's alter ego claim.  Finding that both paragraph eight and paragraph eighteen of the amended Verified Complaint were premised on an alter ego claim, Judge Salas denied Plaintiff's request with respect to both paragraphs without prejudice.  In so holding, Judge Salas noted that Plaintiff's reply brief proposed additional sub-paragraphs that would purportedly bolster the alter ego allegations but explained that courts are directed to look only to the pleading when determining whether an allegation would survive a Rule 12(b)(6) analysis.  Id. (*citing* Pharm. Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F.Supp.2d 761, 765 (D.N.J. 2000)).   In her opinion and order, Judge Salas granted Plaintiff leave to file a second motion to amend based on the language contained in its Reply Memorandum of Law filed with respect to the First Motion to Amend. (Dkt. No. 32 at 13; Dkt. No. 33).

On April 11, 2011, in accordance with Judge Salas' opinion and order, Plaintiff filed this Second Motion to Amend along with a supporting brief and exhibits.  (Dkt. No. 34, Ex. 2.,

Memorandum of Law in Support of Motion to Amend the Verified Complaint ("Pl.'s Moving Br.")).  The revised proposed amendments ("Proposed Amendments") seek to: (1) amend paragraph eight to clarify an allegation regarding how the Abu Rashed Group and its members acted as managers of the Vessels on charter to Litan; (2) amend paragraph nine to add greater particularity concerning Plaintiff's alter ego allegations; and (3) amend paragraph nineteen to add an agency claim "to reflect that Litan was managed on a day-to-day basis by the Members and employees of the Abu Rashed Group." Amended Verified Complaint at 2, 5.  On May 2, 2011, Defendant Pan Ocean filed a brief in opposition (Docket Entry No. 35, "Def.'s Opp. Br.") and on May 9, 2011, Plaintiff filed its reply brief (Docket Entry No. 37, "Pl.'s Reply Br.").  The Court has reviewed the submissions and is prepared to rule.

## II. Discussion

Fed. R. Civ. P. 15(a) allows a party to amend its pleadings by leave of court when justice so requires.  Leave to amend pleadings is to be freely given. Fed. R. Civ. P. 15(a)(2).  "The grant or denial of leave to amend is a matter committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993).  The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities."  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted).  The burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted.  Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  Pursuant to Foman, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to

the opposing party; and (4) futility of amendment.  Id.  "Only when these factors suggest that amendment would be 'unjust' should the court deny leave."  Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir. 2006) (internal citations omitted).  Here, Defendant Pan Ocean renews its argument that the Second Motion to Amend should be denied because the Proposed Amendments, as revised, remain futile.  (Def.'s Opp. Br. at 1).[1]

Defendant Pan Ocean argues that the Proposed Amendments are futile because Plaintiff has failed to allege any specific facts to support its amendments but has, instead, simply alleged conclusory statements.  (Def.'s Opp. Br. at 5-6).  Plaintiff argues that with respect to the amendment of paragraph eight, futility is not a proper basis for objection because the allegations themselves are not meant to state an independent claim or cause of action such that a Rule 12(b)(6) analysis is even possible.  (Pl.'s Moving Br. at 4).  Next, Plaintiff asserts that the paragraph nine amended alter ego allegation is now pled with sufficient particularity.  Id.  Lastly, Plaintiff argues that the paragraph nineteen agency allegations are proper because they are not being made against Defendants, but simply seek to describe the relationship between Litan and the Abu Rashed Group.  (Pl.'s Reply Br. at 14).

An amendment is futile when a proposed amended complaint "would fail to state a claim upon which relief could be granted."  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  Thus, "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency it

---

[1] Defendant does not object to the Second Motion to Amend under the remaining Foman factors, i.e. - undue delay, bad faith or dilatory motive and undue prejudice to the opposing party. Accordingly, the Court will not conduct an analysis of these factors.

applies under Rule 12(b)(6)." Id. In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 225, 234 (3d Cir. 2008). For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S.Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.3d.2d 80 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S.Ct. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

In light of Iqbal, district courts should conduct a two-part analysis when evaluating a motion to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949-50).

Here, the Proposed Amendments seek to correct and add the following allegations to the Amended Verified Complaint: (1) clarify paragraph eight allegations concerning how the Abu Rashed Group and its members, including its employees, acted as managers of the Vessels on charter to Litan; (2) add particularity to the paragraph nine allegations of an alter ego relationship between Litan and the Abu Rashed Group; and (3) add allegations to paragraph nineteen to support an agency relationship between the Abu Rashed Group and Defendant Pan Ocean.  The Court will address each amendment in turn.

### A. Paragraph Eight - Clarification of Named Charter and its Owner/Guarantor

Plaintiff seeks to correct paragraph eight of the Amended Verified Complaint concerning vessel management to name the actual charterer and its managers and/or agents.  Paragraph eight of the Amended Verified Complaint, if granted, would clarify the relationship between the Abu Rashed Group, its various members and Litan.  (Pl.'s Moving Br. At 4).  This amendment does not add a new cause of action.  Instead, the amendment seeks to make clear facts relevant to Plaintiff's *in rem* action against MV Auto Banner; specifically, the statutory presumption of

authority under the Federal Maritime Lien Act, 46 U.S.C. § 31341(a).  Moreover, it is unclear

from Defendant Pan Ocean's pleadings that it objects to the *in rem* claim against MV Auto

Banner as the bulk of its objection focuses on the *in personam* alter ego and agency allegations.

As such, the Court will permit Plaintiff to amend paragraph eight to clarify the identity of Litan

and its managers, members, employees and/or agents.

### B. Paragraph Nine - Allegations of Alter Ego Relationship

Defendant Pan Ocean argues that Plaintiff's attempt to add allegations of an alter ego

relationship between Litan and the Abu Rashed Group (the "Proposed Alter Ego Allegation")

should be denied as futile because Plaintiff has failed to offer particularized factual allegations to

support its conclusory assertions.  (Def.'s Opp. Br. at 5-6).  This Court will apply the same Third

Circuit factors the Honorable Esther Salas discussed in performing an alter ego analysis,

including:

> gross undercapitalization . . . 'failure to observe corporate
> formalities, non-payment of dividends, the insolvency of the debtor
> corporation at the time, siphoning of funds of the corporation by
> the dominant stockholder, non-functioning of other officers or
> directors, absence of corporate records, and the fact that the
> corporation is merely a façade for the operations of the dominant
> stockholder or stockholders.'

Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir.

2002) (quoting Am. Bell Inc. v. Fed'n of Tel. Workers, 736 F.2d 879, 886 (3d Cir. 1984)).

Plaintiffs' amended Proposed Alter Ego Allegation would read:

> 9. The Abu Rashed Group and its members were operated s a unit without
> regard to their corporate separateness, with Litan being merely a shell corporation
> dominated and controlled by the Abu Rashed group and its members and/or a
> trade name, alias, alter ego, paying agent, receiving agent and/or joint venturer of
> the Abu Rashed Group and its members.  Additional factors include:

a. Upon information and belief, the Abu Rashed Group and/or its Members, including in particular All Trans Shipping & Trading Co., acted as the Vessels' operations managers or agents on behalf of the nominal charterer Litan.

b. Upon information and belief, Litan was wholly owned by the Abu Rashed Group.

c. Upon information and belief, among the members of the Abu Rashed Group there was a commonality of control and management centered with Mr. Abu Rashed and an overlap of officers, directors, employees, and/or shareholders.

d. Upon information and belief, the Members of the Abu Rashed Group shared common operations, the same offices (at Amman, Jordan and Beirut, Lebanon), employees (including Imad Elia and Mohammed Hamad), telephone and telefax numbers, and e-mail addresses ("@alltransjo.net").

e. Upon information and belief, Litan was an undercapitalized shell corporation whose name was used by other members of the Abu Rashed group to enter in charter parties.

f. Upon information and belief, the business between the Members of the Abu Rashed Group was not conducted at arms length and/or the proper corporate formalities were not observed.

g. Upon information and belief, Litan was severely undercapitalized as its total share capital was only $10,000.

h. Upon information and belief, the Abu Rashed Group and its members dominated, controlled and used Litan as the nominal charterer so that it could evade its liabilities to creditors and commit a fraud or wrong against such creditors, including PAN OCEAN as they allege in their complaint against the Rashed group and its members in the Southern District of New York action 09 Civ. 7692.

(Pl.'s Moving Br. at 2-4).

Although Plaintiff's Amended Verified Complaint sets forth more sufficient grounds for its Proposed Alter Ego Allegation, the Amended Verified Complaint continues to suffer from the same deficiencies as the original Verified Complaint and does not meet the requirements of Fed. R. Civ. P. 8(a)(2).   Plaintiff recites the relevant Teamster factors but does not provide factual

-9-

underpinnings to appropriately support its alter ego allegations. First, Plaintiff simply alleges

that "[t]he proper corporate formalities were not observed." Amended Verified Complaint ¶ 9(f).

This unsupported conclusion is devoid of any facts to show that Plaintiff has a "plausible claim

for relief." Iqbal, 129 S.Ct. at 1949-50. Second, the Amended Verified Complaint does not

allege non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning

of funds of the corporation by the dominant stockholder or absence of corporate records. Finally,

Plaintiff alleges that: (1) "upon information and belief, Litan was severely undercapitalized as its

total share capital was only $10,000;" (2) there was a commonality of control and management

and (3) the members of the Abu Rashed Group shared common operations, including offices,

telephone numbers, and email addresses. Amended Verified Complaint ¶¶ 9(c), (d) and (g).

With respect to the commonality allegations, Plaintiff fails to provide the shared addresses or

shared telephone numbers of the members of the Abu Rashed Group. Plaintiff also fails to

sufficiently describe the interrelationship between the various Abu Rashed Group entities

(including Litan, ERSAL, All Trans S.A.L., All Trans Shipping and Trading Company, AAA

Shipping Lines Corp. and Cotrans GMBH) and their cross-dealings in arranging and/or

conducting certain transactions, meetings, or settlements. The Court acknowledges that the

Teamsters factors are non-binding and need not all be satisfied to succeed on an alter ego claim.

See Chen v. HD Dimension, Corp., No. 10-863, 2010 WL 4721514, at *4 (D.N.J. Nov. 15,

2010). However, the bare-boned allegations of undercapitalization and common control and/or

management, standing alone, do not rise to the level of plausibility required to survive a 12(b)(6)

motion.

In sum, Plaintiff has provided little to no facts that connect the dots.  Instead, Plaintiff

essentially inserts the appropriate proper noun into the <u>Teamsters</u> factors listed above. As the

Supreme Court made clear in <u>Iqbal</u>, "a pleading that offers labels and conclusions or a formulaic

recitation of the elements of a cause of action will not do." <u>Iqbal</u>, 129 S.Ct at 1949.  As such,

Plaintiff's parroting of the alter ego factors alone is insufficient to satisfy the required pleading

standards.  Plaintiff's Proposed Alter Ego Allegation would not withstand a motion to dismiss

and shall be denied without prejudice.[2]

### C. Paragraph Nineteen - Agency Allegations

Alternatively, in paragraph 19 of the Second Amended Complaint, Plaintiff alleges that the

Abu Rashed Group and its members acted as agents of Defendant Pan Ocean in ordering the Bunkers

on behalf of the Vessels and Defendant Pan Ocean ("Proposed Agency Allegation").  Amended

Verified Complaint ¶ 19.  Plaintiff specifically names "Litan, ERSAL and its managers and/or

---

[2] Defendant additionally invokes the Supplemental Rules for Certain Maritime and Admiralty
Claims (the "Supplemental Rules") that govern the commencement and pleading of *in rem*
admiralty actions like that present before the Court. 28 U.S.C. Supplemental Rule E(2)(a).  The
Supplemental Rules impose a more heightened pleading standard than the general Fed. R. Civ. P.
8(a) pleading requirements.  Specifically, Supplemental Rule  E(2)(a) directs that a complaint *in
rem* must:

> [s]tate the circumstances from which the claim arises with such particularity that
> the ... claimant will be able, without moving for a more definite statement, to
> commence an investigation of the facts and to frame a responsive pleading.

<u>Id.</u>; <u>See</u> <u>Puerto Rico Ports Authority v. BARGE KATY-B</u>, 427 F.3d 93, 105 (1st Cir. 2005)
("Ordinary notice pleading does not satisfy the stringencies of the [Supplemental Rules].").
Having held that the Proposed Amendment fails to meet the lower 8(a)(2) standard, the Court
need not entertain an E(2)(a) analysis.  Nonetheless, the parties are instructed to address
Supplemental Rule E(2)(a) - both its scope and applicability - in any and all future pleadings
related to this issue.

officers and/or employees and/or agents Mr. Imad Elia and Mr. Mohammed Hamad," as the members of the Abu Rashed Group.  Id.  Defendant Pan Ocean objects and argues that this amendment is similarly futile because it is insufficiently pled.  (Def.'s Opp. Br. 1).  This Court agrees with Defendant Pan Ocean and finds that Plaintiff's Proposed Agency Allegation lacks requisite facts to infer a plausible agency claim against non-party Abu Rashed Group.

In addition to the alter ego theory, the law recognizes "a second theory under which a parent may be held liable for the activities of its subsidiary: an application of general agency principles." Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988).  "When one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent.  Liability may attach to the principal corporation even though it is not a party named in the agreement."  Id. (internal citations omitted).  Other courts in this District have held that "[u]nder an agency theory, the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary.  The parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities."  Ramirez v. STI Prepaid LLC, 644 F. Supp. 2d 496, 508 (D.N.J. 2009) (internal quotation omitted).  "Factors to consider in determining whether domination exists include stock ownership, officers and directors, financing, responsibility for day-to-day operations, arrangements for payment of salaries and expenses, and origin of subsidiary's business and assets."  Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 658 F.Supp. 1061, 1084 (D.Del. 1987) (internal quotations omitted).[3]

---

[3] The Court notes the similarity between the factors to be considered in an agency analysis and the factors to be considered in an alter ego analysis.  However, courts are to address each claim independently.  See Phoenix Canada Oil Co. Ltd., 842 F.2d at 1477 (distinguishing between agency and alter ego claims and explaining the different arrangements that must be established to

Plaintiff's Proposed Agency Allegation, as currently pled, is conclusory and fails to meet the Fed. R. Civ. P. 8(a)(2) plausibility standard.  More specifically, the Proposed Agency Allegation does not set forth any facts that evidence that the Abu Rashed Group exercised significant, or any, control over Litan as required under Ramirez.  Here, Plaintiff does not assert facts regarding prior dealings between the Abu Rashed Group or its other entities and Litan.  In fact, the Proposed Agency Allegation does not address any of the enumerated Phoenix factors listed above.[4]  Instead, Plaintiff simply states that the Abu Rashed Group was the owner and guarantor of Litan.  This, in and of itself, does not give rise to parental liability.  See Black v. JP Morgan Chase & Co., No. 10-848, 2011 WL 4102802 (W.D.Pa., Aug. 10, 2011) (quoting Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil Co., 456 F.Supp. 831, 840-41 (D.Del. 1978) (finding that the mere fact that one corporation owns a controlling interest in another does not result in the creation of an agency relationship).

For purposes of the Amended Verified Complaint, this Court believes that the charter agreement between Defendant Pan Ocean and Litan would likely establish that *Litan* acted as an agent on behalf of Defendant Pan Ocean.  However, Plaintiff's claim, as it is asserted in paragraph nineteen, requires the Court to go one step further and infer that the *Abu Rashed Group* acted as Litan's agent in fulfilling that charter agreement, and thus as agent of Defendant Pan Ocean.  Plaintiff fails to provide facts that indicate the Abu Rashed Group's control or

---

prevail under each claim).

[4] Plaintiff alleges a commonality of control and an overlap of certain officers and employees in its paragraph nine Proposed Alter Ego Allegation.  Amended Verified Complaint ¶ 9(c), (d).  The Court cannot attribute supporting allegations for one legal theory to that of another.

dominion over Litan reach the standard necessary for a finding of agency.  Plaintiff simply

asserts that all parties it claims are members of the Abu Rashed Group are also per se agents of

Defendant Pan Ocean. To that end, Plaintiff argues in its reply brief that paragraph nineteen, like

paragraph eight, merely seeks to describe the relationship between Litan and the Abu Rashed

Group.  (Pl.'s Reply Br. at 8, 14).   This argument puts the proverbial cart before the horse.

Plaintiff must prove that an agency relationship exists before it can describe that relationship.  In

sum, even after a liberal reading of Plaintiff's Proposed Agency Allegation, the Court finds that

Plaintiff's bare conclusions cannot survive a Rule 12(b)(6) motion to dismiss.  See Fowler, 578

F.3d at 210-11 ("[A] complaint must do more than allege the Plaintiff's entitlement to relief.  A

complaint has to 'show' such an entitlement with facts.").

### III.  Conclusion

For the reasons set forth above, the Court grants Plaintiff's Second Motion to Amend in

part and denies Plaintiff's Second Motion to Amend without prejudice in part.  With respect to

amending paragraph eight, the Second Motion to Amend is **GRANTED**.  With respect to

amending paragraphs nine and nineteen to include allegations of an alter ego relationship and an

agency relationship, respectively, the Second Motion to Amend is **DENIED** without prejudice.

**s/ Cathy L. Waldor                                    **

**CATHY L. WALDOR**

**UNITED STATES MAGISTRATE JUDGE**

-14-